# **EXHIBIT A**
# (Loan Agreement)

# LOAN AGREEMENT

**OMNIS MINERAL TECHNOLOGIES, LLC**, a Delaware limited liability company ("Borrower"), and **HENDRICKS RESOURCES LIMITED**, a Jersey company ("Lender"), hereby agree as follows:

1. **Definitions.** For purposes hereof:

    1.1 "Affiliate" will mean, as applied to any Person, (i) any other Person directly or indirectly controlling, controlled by, or under common control with, that Person, (ii) any other Person that owns or controls 10% or more of any class of equity securities (including any equity securities issuable upon the exercise of any option or convertible security) of that Person or any of its Affiliates, or (iii) as to a corporation, each director and executive officer thereof, and, as to a partnership, each general partner thereof, and, as to a limited liability company, each managing member or similarly authorized person thereof (including officers or managers), and, as to any other entity, each Person exercising similar authority to that of a director or officer of a corporation. For the purposes of this definition, the term "control" (including, with correlative meanings, the terms "controlling," "controlled by" and "under common control with") as applied to any Person, means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of that Person, whether through ownership of voting securities, by contract or otherwise.

    1.2 "Agreement" will mean this Loan Agreement by and between Borrower and Lender.

    1.3 "Business Day" will mean any day excluding Saturday, Sunday and any other day on which banks are required or authorized to close in New York.

    1.4 "Cast" will mean CAST Americas, LLC, a Delaware limited liability company.

    1.5 "Closing" will have the meaning as set forth in Section 3.1.

    1.6 "Closing Date" will have the meaning as set forth in Section 3.1.

    1.7 "Default Rate" will mean 5% per annum plus the highest rate of interest that would otherwise be in effect under the Note but not more than the highest rate permitted by applicable law.

    1.8 "Default" will mean any event or condition that with the passage of time or giving of notice, or both, would constitute an Event of Default.

    1.9 "Event of Default" will mean any of the events listed in Section 6.

    1.10 "Intellectual Property" will mean any and all intellectual property, including copyrights, copyright licenses, patents, patent licenses, trademarks, trademark

licenses, technology, know-how and processes, all rights therein, and all rights to sue at law or in equity for any past, present, or future infringement, violation, misuse, misappropriation or other impairment thereof, whether arising under United States, multinational or foreign laws or otherwise, including the right to receive injunctive relief and all proceeds and damages therefrom.

**1.11** "Loan" will mean any and all advances of funds under this Agreement or the Note.

**1.12** "Note" will mean any note, now or in the future, between Borrower and Lender, and will include any amendments made thereto and restatements thereof, extensions and replacements.

**1.13** "Obligations" will mean and include all loans, advances, debts, liabilities, obligations, covenants and duties owing to Lender from Borrower of any kind or nature, present or future, whether or not evidenced by any note, guaranty or other instrument, including but not limited to those arising under: (i) this Agreement, (ii) the Note, (iii) under any other agreement, instrument or document, whether or not for the payment of money, whether arising by reason of an extension of credit, opening of a letter of credit, loan, guaranty, indemnification or in any other manner, whether direct or indirect (including those acquired by assignment, participation, purchase, negotiation, discount or otherwise), absolute or contingent, joint or several, due or to become due, now existing or hereafter arising; and as to all of the foregoing, including any amendments, modifications, or superseding documents to each of the foregoing.

**1.14** "Omnis Agreement" will mean that certain agreement among Borrower, Lender and Cast dated January 24, 2015.

**1.15** "Organizational Documents" will mean the documents necessary for the formation of Borrower, including the Articles of Organization and Operating Agreement of Borrower.

**1.16** "Person" will include an individual, a corporation, a limited liability company, an association, a partnership, a trust or estate, a joint stock company, an unincorporated organization, a joint venture, a government (foreign or domestic), any agency or political subdivisions thereof, or any other entity.

**1.17** All other capitalized terms not defined herein will have the meaning as set forth in the Omnis Agreement.

**2.** **Loan.** On the Closing Date and subject to the terms and conditions of this Agreement, the Lender agrees to make, in a single advance, a term loan to the Borrower in an amount of $1,000,000, which will be evidenced by a promissory note substantially in the form of Exhibit A and subject to the terms and conditions and upon the representations and warranties of Borrower set forth in this Agreement. The Loan will be disbursed, will

bear interest at a fixed rate of 5% per annum and will be repayable in the manner set forth in the Note, the terms of which are incorporated herein by reference.

3. **Closing and Conditions to Closing.**

   3.1 **Closing.** The closing of the transactions contemplated in this Agreement (the "Closing") shall occur at 9:00 A.M. (Eastern time) on the close of business on the date that is three (3) Business Days following satisfaction or written waiver of all of the conditions set forth in Section 3.2 (other than those conditions which are to be satisfied at the Closing) or such other date or location upon which the parties may mutually agree (the "Closing Date"). The parties shall use their reasonable best efforts to complete the Closing through electronic means of communication to avoid the necessity of a physical Closing.

   3.2 **Conditions Precedent to Loan.** The obligation of the Lender to make the Loan requested to be made by it hereunder is subject to the satisfaction or the waiver by the Lender of the following conditions precedent:

   3.2.1 The Lender shall have received:

   3.2.1.1 this Agreement, duly executed and delivered by an authorized officer of the Borrower;

   3.2.1.2 the Note, duly executed and delivered by an authorized officer of the Borrower;

4. **Representations and Warranties.** To induce Lender to enter into this Agreement and to make the Loan, Borrower hereby represents and warrants as follows:

   4.1 **Organization.** Borrower is a limited liability company duly organized and in full force and effect, under the laws of the state of Delaware, is duly qualified in all jurisdictions where required by the conduct of its business or ownership of its assets except where the failure to so qualify would not have a material adverse effect on its condition, financial or otherwise, and has the power and authority to own and operate its assets and to conduct its business as is now done.

   4.2 **Litigation, etc.** As of the date hereof, there are no actions, suits, proceedings or governmental investigations pending or, to its knowledge, threatened against Borrower which, if adversely determined, could result in a material and adverse change in its financial condition, business or assets; and there is no basis known to Borrower for any such actions, suits, proceedings or investigations.

   4.3 **Authority.** Borrower has full power and authority to enter into the transactions provided for in this Agreement. The documents to be executed by Borrower in connection with this Agreement (the "Transaction Documents"), when executed and delivered by Borrower will constitute the legal, valid and binding obligations of Borrower enforceable in accordance with their respective terms except as such

enforceability may be limited by applicable bankruptcy, reorganization, insolvency, moratorium or similar laws in effect from time to time affecting the rights of creditors generally and except as such enforceability may be subject to general principles of equity (regardless of whether such enforceability is considered in a proceeding in law or in equity).

**4.4** **Other Defaults.** There does not now exist any default or violation by Borrower of or under any of the terms, conditions or obligations of: (a) its Organizational Documents; (b) any indenture, mortgage, deed of trust, franchise, permit, contract, agreement, or other instrument to which Borrower is a party or by which Borrower is bound; or (c) any law, regulation, ruling, order, injunction, decree, condition or other requirement applicable to or imposed upon Borrower by any law or by any governmental authority, court or agency; and the transactions contemplated by this Agreement and the Security Documents will not result in any such default or violation.

**4.5** **No Contravention.** The execution and delivery of this Agreement, Note and the Transaction Documents and the consummation of the transactions contemplated therein do not and will not conflict with or result in a breach of any provision of Borrower's Organizational Documents or result in a default under any of the terms, conditions or provisions of, or result in the breach of, or accelerate or permit the acceleration of the performance required by, any contract, agreement commitment or obligation of any nature whatsoever to which Borrower or any of its Affiliates is a party or (iii) violate any order, writ, injunction or decree applicable to Borrower.

**4.6** **Intellectual Property.** Borrower owns, or is licensed to use, all Intellectual Property necessary for the conduct of its business as currently conducted or proposed to be conducted, including, without limitation, the construction and operation of Plants. No material claim has been asserted and is pending by any Person challenging the use, validity or effectiveness of any Intellectual Property, nor is the Borrower aware of any valid basis for any such claim. The use of Intellectual Property by Borrower does not materially infringe on the rights of any Person.

**4.7** **Compliance with Laws.** Borrower has complied with all applicable laws and regulations and has obtained any and all licenses, permits, franchises, or other governmental authorizations necessary for the ownership of its properties and the conduct of its business.

**5.** **Covenants.** From the date of execution of this Agreement until all Obligations to Lender have been fully paid and this Agreement terminated, Borrower shall:

**5.1** **Lender Participation in Plants.** Notwithstanding anything to the contrary in the Omnis Agreement or any other agreement among Lender and Borrower, Omnis hereby grants, and shall cause Cast to grant, to Lender the exclusive right to participate (at Lender's option) as a 50% owner in any project to construct a Plant

on any site anywhere in the world. In addition, Omnis hereby grants, and shall cause Cast to grant, to Lender the exclusive right to market any Products (as defined in the Omnis Agreement) anywhere in the world, irrespective of the origin of the Products. Omnis hereby represents and warrants that it has the ability to cause CAST to be bound by the provisions of this Agreement. Omnis shall disclose all projects under consideration to the Lender and shall not review a project for the construction of a Plant anywhere in the world without first bringing it to the notice of the Lender and offering the Lender the exclusive right (at the Lender's option) to participate in the project. The Lender shall take overall responsibility for commercial development and operation of Plant on any site anywhere in the world in which it has agreed to participate. The terms of such participation and ownership would follow the terms as set forth in the Omnis Agreement. The parties acknowledge and agree that this provision will take precedence over the Omnis Agreement or any other agreements entered into among Lender, Borrower and/or Cast.

    5.2    **Use of Funds.** Omnis shall use the funds from the Loan solely for the development of the Technology or the financing of a Plant or Plants in which Lender has an ownership interest.

    5.3    **Taxes.** Pay and discharge when due all taxes, assessments, charges, levies and other liabilities imposed upon it, its income, profits, property or business.

    5.4    **Compliance with Laws.** Comply with all laws and regulations applicable to Borrower and to the operation of its business and do all things necessary to maintain, renew and keep in full force and effect all rights, permits, licenses, certificates, satisfactory clearances and franchises necessary to enable Borrower to continue its business.

6. **Events of Default.** Upon the occurrence of any of the following events with respect to Borrower:

    6.1    **Non-Payment.** The non-payment of any principal amount of the Note when due, whether by acceleration or otherwise, or the nonpayment of any interest upon the Note or any other amount due Lender pursuant to this Agreement when the same is due and the continuance of such failure for five (5) days after written notice of nonpayment;

    6.2    **Covenants.** The default in the due observance of any covenant or agreement to be kept or performed by it under the terms of this Agreement, the Note any Transaction Document, the Omnis Agreement or any other agreement entered into among Lender and Borrower and the failure or inability of it to cure such default within thirty (30) days of the occurrence thereof; provided that such thirty (30) day grace period will not apply to: (a) any default which in Lender's good faith determination is incapable of cure, or (b) any default that has previously occurred.

    6.3    **Representations and Warranties.** Any representation or warranty made by it in this Agreement, the Note or any Transaction Document is false or erroneous in any material respect or any material breach thereof has been committed;

    6.4    **Bankruptcy, etc.** It: (a) dissolves or is the subject of any dissolution, a winding up or liquidation; (b) makes a general assignment for the benefit of creditors; (c) is insolvent or unable to pay its debts as they become due; or (d) files or has filed against it a petition in bankruptcy, for a reorganization or an arrangement, or for a receiver, trustee or similar creditors' representative for its property or assets or any part thereof, or any other proceeding under any federal or state insolvency law, and if filed against it, the same has not been dismissed or discharged within 60 days thereof;

    6.5    **Intellectual Property.** A transfer or exclusive license of any of Borrower's Intellectual Property to any other Person (other than Lender or a license of such Intellectual Property to an entity that will own or operate a Plant in which Lender has an ownership interest in such entity).

then immediately upon the occurrence of any of the events described in Section 6 and at the option of the Lender upon the occurrence of any other Event of Default, the Loan, Note and all other Obligations immediately will mature and become due and payable without presentment, demand, protest or notice of any kind which are hereby expressly waived. After the occurrence of any Event of Default, Lender is authorized without notice to anyone to offset and apply to all or any part of the Obligations all moneys, credits and other property of any nature whatsoever of Borrower now or at any time hereafter in the possession of, in transit to or from, under the control or custody of, or on deposit with (whether held by Borrower individually or jointly with another party) Lender. The rights and remedies of Lender upon the occurrence of any Event of Default will include but not be limited to all rights and remedies provided under applicable law.

7.    **Post-Closing Expenses.** To the extent that Lender incurs any reasonable costs or expenses in enforcing its rights set forth in this Agreement, the Note or any Transaction Document or observing or performing any of the conditions or obligations of Borrower or any thereunder, including but not limited to reasonable attorneys' fees in connection with litigation, preparation of amendments or waivers, present or future stamp or documentary taxes, charges or similar levies which arise from any payment made hereunder or from the execution, delivery or registration of this Agreement, such costs and expenses will be due on demand, will be included in the Obligations.

8.    **Representations and Warranties to Survive.** All representations, warranties, covenants and agreements made by Borrower in this Agreement will survive the execution and delivery of this Agreement and the issuance of any Note.

9.    **General**.

    9.1    **Continuing Agreement.** This Agreement is and is intended to be a continuing Agreement and will remain in full force and effect until the Loan is finally and

irrevocably paid in full and this Agreement is terminated by a writing signed by Lender specifically terminating this Agreement.

9.2 **No Third Party Beneficiaries.** Nothing express or implied herein is intended or will be construed to confer upon or give any person, firm, or corporation, other than the parties hereto, any right or remedy hereunder or by reasons hereof.

9.3 **Waiver.** No delay or omission on the part of Lender to exercise any right or power arising from any Event of Default will impair any such right or power or be considered a waiver of any such right or power or a waiver of any such Event of Default or any acquiescence therein nor will the action or nonaction of Lender in case of such Event of Default impair any right or power arising as a result thereof or affect any subsequent default or any other default of the same or a different nature.

9.4 **Notices.** All notices, demands, requests, consents, approvals and other communications required or permitted hereunder will be in writing and will be conclusively deemed to have been received by a party hereto and to be effective if delivered personally to such party, or sent by overnight courier service charges prepaid, or by certified or registered mail, return receipt requested, postage prepaid, addressed to such party at the address set forth below or to such other address as any party may give to the other in writing for such purpose:

To Lender:   Hendricks Resources Limited
30A Brook Street
London W1K 5DJ

Attention: Julian McIntyre

To Borrower:   Omnis Mineral Technologies, LLC
3757 State Street
Santa Barbara, California 93105
Attention: Simon Hodson

All such communications, if personally delivered, will be conclusively deemed to have been received by a party hereto and to be effective when so delivered, or if sent by overnight courier service, on the day after deposit thereof with such service, or if sent by certified or registered mail, on the third Business Day after the day on which deposited in the mail.

9.5 **Successors and Assigns.** This Agreement will be binding upon and inure to the benefit of Borrower and Lender and their respective successors and permitted

-7-

assigns, provided, however, that Borrower may not assign this Agreement in whole or in part without the prior written consent of Lender.

9.6 **Entire Agreement and Modifications.** This Agreement, the Note and the Transaction Documents constitute the entire agreement of the parties and supersede all prior agreements and understandings regarding the subject matter of this Agreement, provided that the Omnis Agreement and all other agreements the parties may have entered into related to the Technology shall remain in full force and effect but subject to the terms of this Agreement. The parties may not amend or modify this Agreement, the Note or any Transaction Document, except by written agreement that each party executes and that is identified itself as an amendment to such agreement.

9.7 **Remedies Cumulative.** No single or partial exercise of any right or remedy by Lender will preclude any other or further exercise thereof or the exercise of any other right or remedy. All remedies hereunder and in any instrument or document evidencing, securing, guaranteeing or relating to any Loan or now or hereafter existing at law or in equity or by statute are cumulative and none of them will be exclusive of the others or any other remedy. All such rights and remedies may be exercised separately, successively, concurrently, independently or cumulatively from time to time and as often and in such order as Lender may deem appropriate.

9.8 **Illegality.** If fulfillment of any provision hereof or any transaction related hereto or of any provision of this Agreement, the Note or the Transaction Documents, at the time performance of such provision is due, involves transcending the limit of validity prescribed by law, then ipso facto, the obligation to be fulfilled will be reduced to the limit of such validity; and if any clause or provisions herein contained other than the provisions hereof pertaining to repayment of the Obligations operates or would prospectively operate to invalidate this Agreement, the Note or any Transaction Document in whole or in part, then such clause or provision only will be void, as though not herein contained, and the remainder of this Agreement, the Note or any Transaction Document (as the case may be) will remain operative and in full force and effect; and if such provision pertains to repayment of the Obligations, then, at the option of Lender which will be reasonably exercised, all of the Obligations of Borrower to Lender will become immediately due and payable.

9.9 **Headings.** The headings in this Agreement are for convenience only and will not limit or otherwise affect any of the terms hereof.

9.10 **Time.** Time is of the essence in the performance of this Loan Agreement.

9.11 **Counterparts.** This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed will be deemed to be an original and all of which taken together will constitute one and the same agreement. Any party so executing this Agreement by facsimile transmission shall promptly deliver a manually executed counterpart,

provided that any failure to do so shall not affect the validity of the counterpart executed by facsimile transmission.

9.12 **Governing Law.** This Agreement, the Note and all Transaction Documents shall in all respects, except as set forth in the proviso, be governed by the internal law of the State of New York as to all matters of construction, validity and performance, without regard to conflicts of law principles, except Title 14 of Article 5 of the New York General Obligations Law.

9.13 **Submission to Jurisdiction; Service of Process.** The parties hereby irrevocably and unconditionally agrees that any suit, action or proceeding with respect to this Agreement, the Note, the Transaction Documents or any of the transaction contemplated therein shall be brought in (i) any New York federal court sitting in the Borough of Manhattan, the City of New York and (ii) any New York state court, but only to the extent that no New York federal court has jurisdiction. The parties irrevocably submit to the jurisdiction of each such court, and agrees that process served either personally or by registered mail shall, to the extent permitted by law, constitute adequate service of process in any such suit. In addition, the parties hereby irrevocably waive, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of venue in any suit, action or proceeding arising out of or relating to this Agreement, the Note or any Transaction Document brought in said courts, and hereby irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. *Pursuant to Section 5-1401 of the General Obligations Law of the State of New York, and without in any way limiting the preceding consents to jurisdiction and venue, the parties intend (among other things) to avail themselves of the benefit of Section 5-1402 of the General Obligations Law of the State of New York and Rule 327(b) of the civil practice law and rules of the State of New York.* Nothing herein shall in any way be deemed to limit the ability of Lender to serve any such writs, process or summonses, in any manner permitted by applicable law or to obtain jurisdiction over the Borrower, in such other jurisdiction, and in such manner, as may be permitted by applicable law.

9.14 *__Waiver of Jury Trial.__ The parties hereto each waive any right to trial by jury in any action or proceeding relating to this Agreement, the Note or any Transaction Document or any actual or proposed transaction or other matter contemplated in or relating to any of the foregoing*

**SIGNATURE PAGE TO FOLLOW**

### SIGNATURE PAGE OF LOAN AGREEMENT BETWEEN HENDRICKS RESOURCES LIMITED AND OMNIS MINERAL TECHNOLOGIES, LLC

Executed effective as of March 29, 2014 G.M.
2015

HENDRICKS RESOURCES LIMITED

By: G.A.M____

Print Name: JULIAN MCINTYRE

Title: DIRECTOR

OMNIS MINERAL TECHNOLOGIES, LLC

By: ____

Print Name: SIMON K. HODSON

Title: PRESIDENT

7510644

-10-